FILED
2014 Sep-09  PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| MADRICUS FELDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cv-02355-CLS-TMP |
| | ) | |
| DONALD LUKIMA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

This cause is before the court on the motion for summary judgment filed by defendant Donald Lukima ("Lukima") on July 21, 2014. (Doc. 31). The Defendant seeks summary judgment as to all claims set out by plaintiff Madricus Felder ("Felder"). The motion was supported by a brief and evidentiary submission. (Docs. 30, 31). The Plaintiff was given an opportunity to respond to the motion (doc. 32), but did not do so. The deadline for response has since expired. The court has considered the evidence and the arguments set forth. The parties have not consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) (doc. 7); accordingly, the magistrate judge submits this Report and Recommendation.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he

2

plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11, 103 S.Ct. 2161 (1983).

However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d

256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the fact-finder could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the fact-finder, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

The failure to respond to a motion for summary judgment is not enough, in itself, to justify granting summary judgment.  Indeed, Rule 56(a) instructs that the court shall grant summary judgment only "*if the movant shows* that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis added).  Thus, a court "may neither grant nor deny summary judgment by default."  James Wm. Moore et al., Moore's Federal Practice, § 56.99[b] (3d ed. 1997).  As noted by the Advisory Committee, "summary judgment cannot be granted by default *even if there is a complete failure to respond to the motion*, much less when an attempted response fails to comply with Rule 56(c) requirements."  Fed. R. Civ. P. 56 advisory committee's note (emphasis added).  Because "the district court cannot base the entry of summary judgment on the mere fact that it is unopposed, it must consider the merits of the motion."  United States v. one Piece of Real Prop. Located at 5800 SW 74th

4

Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004).  Utilizing these standards, the court undertakes the analysis of whether the defendant has shown that it is entitled to judgment as a matter of law.

## FACTS

For purposes of summary judgment, the facts are taken in the light most favorable to the non-moving plaintiff and are as follows.  At the time of the incident resulting in the instant action, the Plaintiff was an inmate housed at the St. Clair Correctional Facility, and the Defendant was a correctional officer at the same facility.  The Plaintiff alleges in his complaint that he was exiting his cell when Lukima entered the cell block.  Felder alleges that he continued walking away from Lukima, but Lukima called him back for a "routine shake down" of his cell.  Felder stepped back into his cell when he noticed he had his cell phone (contraband) in his pocket.  Felder states that he then turned and walked out of the cell, while Lukima was still standing outside the cell.  Lukima told Felder to step back inside the cell, and Felder said, "No."  Lukima called for backup as Felder threw the phone to the second level of the cell block.[1]  Lukima then tackled Felder, but Felder "did not go down."  (Doc. 1, p. 4).  A short "tussle" ensued, ending with Lukima instructing the plaintiff to stand by the wall while Lukima and another

---

[1]   The exchange leading up to Lukima hitting Felder in the face and taking him to the ground varies somewhat in Felder's deposition from what he described in the sworn complaint. However, the difference in these expository details is not determinative of whether summary judgment is appropriate.  The court, for summary judgment purposes, will use the facts as they are set out in the deposition, which is the direct testimony of the plaintiff, not a factual summary prepared fro him by another inmate.  Any discrepancies will be addressed as needed in the body of this Report and Recommendation.

officer searched his cell.   As Felder was standing by the wall, he saw Lukima approaching him with his arm "cocked" as if ready to strike plaintiff.   Plaintiff dodged the blow and was only grazed along the side of his head.   Lukima then grabbed plaintiff's shirt and pants, throwing him to the floor to handcuff plaintiff.   When Felder was on the ground, backup officers arrived, who, "for no reason," proceeded to kick, stomp on, and beat Felder while he was handcuffed.   (Id.)   Felder testified that Lukima did not hit or kick him, but was wrenching his arm as if to break his shoulder while trying to handcuff him.   Plaintiff was then escorted to the infirmary for examination, which revealed minor bruises and scrapes.

Felder claims that Lukima violated his constitutional rights by kicking, stomping on, and beating Felder after he had been restrained with handcuffs.

## DISCUSSION

The Defendant argues that summary judgment is warranted in Felder's Eighth Amendment claim of excessive force, and his state law claims of conspiracy, outrage, and assault and battery.   The court will address each claim in turn.

## Federal Law Claims

### Excessive Force

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed. 2d 251 (1986).

The Supreme Court held in <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7, 112 S.Ct. 995, 999, 117 L.Ed. 2d 156 (1992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in <u>Whitley</u>: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

The defendant argues that Felder's deposition testimony, given on June 5, 2014, negates his claims of excessive force to the extent that the defendant is entitled to judgment as a matter of law.  Lukima argues that "[t]he material facts surrounding Felder's claim of unnecessary use of force no longer remain in dispute, and thus no longer preclude summary judgment." (Doc. 31, p. 12).  Lukima points to certain excerpts from Felder's deposition and argues that, due to what is said in these particular excerpts, there is no fact question as to whether Lukima used excessive force.

In his deposition, Felder testifies that he was "standing in the hall. . . . waiting on Officer Lukima" to exit his cell when "Officer Lukima came out the door and swung and punched [Felder] in the face." (Doc. 35-2, p. 19).  Felder went on to explain that Lukima hit him in the left cheek area of his face, but Felder saw the blow coming and was able to somewhat dodge it.  (<u>Id.</u> at 26, 33-34).  Felder testified that Lukima then "slam[med] [him] down on the floor," and that – though he was not resisting – the guards on the scene, including Lukima, were beating him and yelling at him to stop resisting.  (<u>Id.</u> at 31-33).  Felder could not see who was involved in the incident – other than Lukima who initially took him to the ground – but the officers involved hit him numerous times in the

head, back, and ribs, and his arm was wrenched behind him in a way that felt like the person doing it, who Felder believes to be Lukima, was "trying to break [his] shoulder out of place."[2]  (Id. at 37-40).

Although Felder does state that Lukima could not have been the only one hitting him (id. at 40), he does not go so far, despite what the defendant argues, as to say that Lukima *did not* hit him.  Felder continues to clearly allege that Lukima punched him in the face without cause and used excessive force in trying to cuff him.

> Q.    So it's your belief, although you don't know for sure, but it's your belief that it was some other officers who were striking you, not Officer Lukima.
>
> A.    I know all of them was striking me.  He had already struck me when he tried to tackle me and tried to punch me.
>
>        . . .
>
> Q.    And so it's your testimony that once  you were placed on the ground, when he grabbed your shirt and  your pants and put you on the ground and was trying to handcuff you, it's your belief that it was some other officers who were striking you, not Officer Lukima, because it would be very difficult for him to do both; is that correct?
>
> A.    It wouldn't be difficult for him to do both.
>
> Q.    I thought you said he had your arm - -
>
> A.    He had my arm.
>
> Q.    He was trying to handcuff you.

---

[2]  Although Felder saw the other officers involved in the incident when he eventually was picked up and taken to the infirmary, they are not named in this action.

A.    Okay.  But you've got one arm.  You've got one of your hands on one of my arms.  That leaves you with another arm.  My right arm is already back.  I'm trying to let them cuff me, but my left arm is way up here (indicating).

Q.    Okay.  So I thought you said earlier, and we can look at the record, but that it was your thought that it was the other officers that were striking you.  You don't know who it was - -

A.    I said I knew for a fact all of them was hitting me, but it would be hard for him to do it with one hand.  So I mean, he can't just do all of this by himself.  No, he can't.

(Doc. 35-2, pp. 41, 45-46).

Although some of Felder's testimony may be confusing, he does not recant the allegations he made in his complaint.  In fact, Felder reinforces his allegations, and it remains for the fact-finder to determine whether to credit Felder's testimony.  To the extent that the Defendant references statements by Felder which seem to indicate that he has "moved past" the incident and would drop the case were it not for a fear of "wasting everyone's time," the fact remains that the Plaintiff has not moved to dismiss the case.  The fact that he may have moved beyond the incidents that occurred in 2010 and does not seem to be holding a grudge cannot be used to assert that he no longer has a valid claim.  In an excessive force claim, the fact-finder must examine several factors, including the need for the application of force, the amount of force used in relation to the need, the restraint used in the application of force, and the extent of injuries suffered.  Consequently the court cannot say that Lukima is entitled to judgment as a matter of law

with respect to the Eighth Amendment excessive-force claim, and the motion for summary judgment must be DENIED.


**State Law Claims**

In his Second Amended Complaint, Felder brought three additional state law claims against Lukima for assault and battery, outrage, and civil conspiracy. The defendant contends that he is entitled to state agent immunity regarding all of those claims.

In Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), the state supreme court set out a detailed test for determining when a state employee is entitled to immunity under Alabama Code § 6-5-338, and changed the focus of such immunity from whether the employee is engaged in a "discretionary function," to the specific provisions of the immunity articulated in Cranman. That restatement of state-agent immunity includes the provision that a state employee is entitled to immunity when "exercising judgment in the enforcement of the criminal laws of the state, including, but not limited to, law enforcement officers' arresting or attempting to arrest persons." 792 So. 2d at 205. Since Cranman, a peace officer's entitlement to immunity under § 6-5-338(a) is judged by the principles set forth in Cranman, and not under an analysis of discretionary versus ministerial functions.[3]  Ex parte City of Tuskegee, 932 So. 2d 895, 904 (Ala. 2005). The statutory immunity extends not only to the officers, but to the governmental unit that

---

[3] It should be noted, however, that even before Cranman, the state courts recognized that discretionary functions were akin to those that required the exercise of judgment.  Ex parte City of Tuskegee, 932 So. 2d at 905, citing Ex parte City of Montgomery, 758 So. 2d at 569.

employs them.  See, e.g., Howard v. City of Atmore, 887 So. 2d 201, 211 (Ala. 2003);

Montgomery v. City of Montgomery, 732 So. 2d 305 (Ala. Civ. App. 1999) (holding that

both the officer and the city were immune under § 6-5-338 for mistaken arrest of man).

In this case, Lukima is a state employee, employed by the Alabama Department of

Corrections.

The immunity shields the state-employed officers from liability "unless [the]

actions were conducted with willful or malicious intent or in bad faith."  Ex parte City of

Montgomery, 758 So. 2d at 570.  Accordingly, the court evaluates a claim of state-agent

immunity by first determining whether the defendant has demonstrated that he was

exercising judgment in arresting or attempting to arrest the plaintiff when the alleged

wrongful conduct occurred.  If so, the burden shifts to the plaintiff to prove that the

defendant acted in "bad faith, with malice or willfulness."  Wood v. Kesler, 323 F.3d

872, 883 (11th Cir. 2003).[4]

Lukima was exercising judgment in detaining Felder (whether his judgment was

correct is a matter for the fact-finder), so the court's analysis of each state-law claim will

turn on whether a reasonable fact-finder could find that he acted in bad faith, with malice,

or with willfulness.  Each state-law claim will be analyzed under its unique state-law

elements.

---

[4] It has been noted that discretionary function immunity and qualified immunity both involve a
"core issue" of whether a defendant violated clearly established law.  Qualified immunity,
however, cannot be defeated by a showing of bad faith, malice, or willfulness.  Scarbrough v.
Myles, 245 F.3d 1299, 1303 n.9 (11th Cir. 2001).

**Conspiracy**

The Plaintiff claims that Lukima's actions with the other officer amounts to the commission of the state law tort of conspiracy.  (Doc. 22, p.3).  Under Alabama law, in order to support civil liability for the tort of conspiracy, the plaintiff must allege an underlying actionable wrong.  Stuart Const. Co., Inc. v. Vulcan Life Ins. Co., 285 So. 2d 920, 923 (Ala. 1973).

> "Civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means."  Keith v. Witt Auto Sales, Inc., 578 So.2d 1269, 1274 (Ala.1991) (citing Eidson v. Olin Corp., 527 So.2d 1283 (Ala.1988)).  "The gist of an action alleging civil conspiracy is not the conspiracy itself, but rather, the wrong committed." 578 So.2d at 1274 (citing Sadie v. Martin, 468 So.2d 162 (Ala.1985)).  For that reason, "[a] civil conspiracy cannot exist in the absence of an underlying  tort."  Goolesby v. Koch Farms, LLC, 955 So.2d 422, 430 (Ala.2006) (citing Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 (Ala.2003)).

Swann v. Regions Bank, 17 So. 3d 1180, 1194-95 (Ala. Civ. App. 2008).  The mere fact that multiple actors are involved in a single incident does not support the finding of a conspiracy.  Conspiracy exists only if there is an agreement , or "meeting of the minds," among the actors to accomplished a specific goal.

> "A civil conspiracy requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means."  McLemore v. Ford Motor Co., 628 So. 2d 548, 550 (Ala. 1993).  A conspiracy requires a meeting of the minds between the conspirators.  First Bank of Childersburg v. Florey, 676 So. 2d 324 (Ala.Civ.App. 1996).  In addition, in order to establish a claim of conspiracy, [plaintiff] would have to prove that the defendants intended to bring about the object of the claimed conspiracy.  Id., at 327.

Bayles v. Marriott, 816 So. 2d 38, 42-43 (Ala. Civ. App. 2001).

Felder appears to allege that the officers involved in his beating conspired and agreed to beat him and thereby violate his Eighth Amendment rights and his right under state law not to be subjected an illegal assault and battery.  His fact statement in the Second Amended Complaint is more or less a rehashing of the facts asserted in the original Complaint.  Other than stating that "[a]ll defendants[5] participated in and/or failed to intervene in the assault and battery and the use of unnecessary and excessive use of [sic] force," Felder does not allege any facts to support a conspiracy claim.  (Doc. 22, pp. 2-3).  He does not put forth any evidence of an agreement among the correctional officers other than that they were all present and participating in the beating.  He does not testify to such evidence in his deposition.  In order to survive a motion for summary judgment, the plaintiff must present "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.  Felder has not done so.  Accordingly, there is no dispute of material fact as to Felder's state law conspiracy claim, and the Defendant's motion for summary judgment regarding that claim is due to be GRANTED.

**Tort of Outrage**

Felder alleges that the beating he received at the hands of Lukima, in addition to violating his Eighth Amendment rights, is sufficient to support the Alabama tort of

---

[5]   In his Second Amended Complaint, Felder attempted to add defendants to the cause of action, but the court denied the motion.

outrage.[6]  The elements of the tort, upon which the plaintiff must offer evidence, are the following:

> The tort of outrage requires that: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) ... the distress was severe.  With respect to the conduct element, this Court has stated that the conduct must be 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'

Thomas v. Williams, 21 So. 3d 1234, 1237-38 (Ala. Civ. App. 2008), quoting Gunter v. Huddle, 724 So. 2d 544, 547 (Ala. Civ. App. 1988)); see also American Road Service Co. v. Inmon, 394 So. 2d 361, 365 (Ala. 1980).  "[T]he tort of outrage is 'a limited remedy to be applied only in flagrantly egregious circumstances.'"  Gunter v. Huddle, 724 So. 2d 544, 547 (Ala. Civ. App. 1988) (quoting Turner v. Hayes, 719 So.2d 1184, 1187 (Ala. Civ. App. 1997)), aff'd in pertinent part, 719 So. 2d 1190 (Ala. 1998).

It is not disputed that officers may use force when necessary to regain control of a dangerous situation.  The use of various degrees of force within a prison is expected, and

---

[6]   It is not clear whether, in the context of the use of force by a law-enforcement officer, Alabama law recognizes the tort of outrage as a distinct cause of action from assault and battery. The court has found no state case law holding that a plaintiff subjected to a use of force by a law-enforcement officer may maintain both an assault and battery and a tort of outrage claim.  To the extent that a use of force may be so extreme and outrageous as to meet the test for an outrage, it also clearly would be an intentional assault and battery.  While not every assault and battery may rise to the level of being outrageous, every outrageous use of force would be an assault and battery.  There seems to be no reason for the tort of outrage to supplement the remedy of assault and battery when the use of force is the event alleged to have caused the injury; outrage would be subsumed in the assault and battery.  Nonetheless, the court will assume for purposes of discussion that there can be two distinct torts.

even legal when necessary to maintain order, security, and discipline.  The courts must defer to some degree to the judgment of corrections officials as to how much force may be reasonably necessary under certain circumstances.  Frequently, it may be uncertain and disputed as to whether the degree of force used was appropriate, but officers must be given some degree of deference in order to make split-second decisions concerning the need for force.  Their judgments may not always be correct when viewed with the benefit of hindsight.  For this reason, the tort of outrage is applicable only to uses of force "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Unless the degree of force used, under the circumstances, meets that rather demanding standard, not tort of outrage is shown.

It is not disputed that Lukima was the officer who was engaged in the incident resulting in this action.  Plaintiff acknowledges that Officer Lukima hit him while attempting to restrain plaintiff handcuffs.  The degree of force used, either by Lukima or the other officers, was not "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Plaintiff asserts that he was punched, kicked, stomped, and hit with a radio.  Although Felder claims that he had several injuries resulting from his encounter with Lukima and other guards, the post-event "Body Chart" reveals only relatively minor bruises and scrapes.  He suffered no life-threatening or lasting injuries.  (See Felder Depo.).  No reasonable fact-finder could determine under these facts that the defendant's actions were so flagrantly outrageous and atrocious as to support the Plaintiff's claim of outrage.

Accordingly, Lukima motion for summary judgment as to the outrage claim is due to be GRANTED.


**Assault and Battery**

Felder claims that the uncalled-for beating by Lukima supports liability for the Alabama tort of assault and battery.  For all the reasons discussed in this court's analysis of state-agent immunity, Lukima's conduct -- accepting Plaintiff's version of the facts as true - was without justification, and a reasonable fact-finder could determine that his actions were done in bad faith, maliciously, or willfully.  Although corrections officers often are called upon to make split-second decisions about the need for force to restore or maintain order and security within the institution, the simple fact that force was used by an officer itself alone does not prove that it was the product of bad faith, maliciousness, or willfulness.  There must be some showing by the plaintiff of other evidence (more than the simple fact that force was used) supporting an inference of bad faith, maliciousness, or willfulness for there to be a trial issue regarding the officer's state-agent immunity.

In this case, there is no dispute that Officer Lukima used force against the plaintiff when he refused to obey the officer's orders for a shakedown search.  Taking the evidence favorably to the plaintiff, as the court must on a defendant's motion for summary judgment, there is other evidence from which it can be inferred that Officer Lukima's use of force was the product of bad faith, maliciousness, or willfulness.  Plaintiff has not presented evidence of statements or comments by Lukima, but he has testified that Officer Lukima attempted to strike him outside the cell after plaintiff had

complied with the order to stand by the wall.  Even though the degree of injuries reflected in the medical evidence fails to show that the force used was excessive, plaintiff contends that Lukima "wrenched" his shoulder as if to break the socket, and held him down while other officers struck and kicked him.  Because the plaintiff has provided evidence in this case from which a reasonable jury could conclude that Officer Lukima used force in bad faith or maliciously or willfully, there is a triable issue as to whether he remains shielded from personal monetary liability by state-agent immunity.  Accordingly, the court cannot say as a matter of law that Lukima is shielded by Alabama's state-agent/discretionary-function immunity, and his motion for summary judgment as to Felder's assault and battery claim is due to be DENIED.

## <u>CONCLUSION</u>

For all the reasons set forth above, the undersigned RECOMMENDS that Defendant Lukima's Motion for Summary Judgment be GRANTED as to Felder's claims of conspiracy and outrage in violation of Alabama state law, but DENIED as to Felder's other claims for cruel and unusual punishment under the Eighth Amendment and the state-law tort of assault and battery.

## Notice of Right to Object

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  Any objections to the failure of the magistrate judge to address any

contention raised in the petition also must be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S. Ct. 899, 88 L.Ed.2d 933 (1986); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge."

DONE this 9th day of September, 2014.


_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE